UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY J. WILMOT-FRANCIS,

                                        Plaintiff,

       v.                                                           9:23-CV-1535
                                                                    (MAD/DJS)

RYAN GIORDANO, et al.,

                                        Defendants.
_____

APPEARANCES:

ANTHONY J. WILMOT-FRANCIS
Plaintiff, pro se
21-A-1315
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541


MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

       Plaintiff Anthony J. Wilmot-Francis commenced this action by filing a pro se civil rights

complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 6 ("IFP Application").  By

Decision and Order entered on January 17, 2024, the Honorable Daniel J. Stewart granted

1

plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that each of plaintiff's asserted claims survived sua sponte review and required a response.  Dkt. No. 9 ("January 2024 Order").

Presently before the Court are the following: (1) an amended complaint filed by plaintiff, Dkt. No. 17; and (2) an unsigned submission with additional pleading allegations filed by plaintiff roughly ten days after the amended complaint, Dkt. No. 18.  For the sake of efficiency, the Clerk is directed to file pages 2 through 6 of plaintiff's supplemental submission (Dkt. No. 18 at 2-6) immediately after page 11 of the amended complaint (Dkt. No. 17).  The Court will consider these filings together as plaintiff's amended complaint.

II.      **SUFFICIENCY OF THE AMENDED COMPLAINT**

A.      **The Complaint and January 2024 Order**

In his original complaint, plaintiff alleged that on November 3, 2023, he was assaulted in his cell by defendant Corrections Officer Giordano, and shortly thereafter assaulted for a second time by this official, as well as by defendants Corrections Officer Vitale, Corrections Officer Millington, and Corrections Officer Rockwell.  Compl. at 4.  Plaintiff also attached several exhibits to his complaint, including a document captioned as a "NOTICE OF INTENT TO FILE A CLAIM[,]" which stated that defendant Giordano "attacked" plaintiff because plaintiff was "taking [defendant Giordano] to court on a separate matter in which he was to be at fault." *Id*. at 9.

The complaint was construed to assert the following Section 1983 claims against the named defendants in their individual capacities: (1) a First Amendment retaliation claim

against defendant Giordano; (2) Eighth Amendment excessive force claims against each

defendant; and (3) Eighth Amendment medical indifference claims against each defendant.

*See* January 2024 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.

§ 1915A(b), each of plaintiff's claims survived sua sponte review.  *Id*. at 7-15.

**B.      Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more

government employees, his amended complaint must be reviewed in accordance with 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review

of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed

at length in the January 2024 Order and it will not be restated in this Decision and Order.

*See* January 2024 Order at 3-5.

Plaintiff's amended complaint reasserts claims based on alleged events that occurred

on November 3, 2023, and includes additional claims involving some of the same defendants

based on alleged events that occurred roughly two months later.  *See generally*, Am. Compl.

The following facts are set forth as alleged in the amended complaint, or detailed in

documents attached thereto.

On November 3, 2023, plaintiff was assaulted in his cell by defendant Giordano, and

shortly thereafter, he was assaulted for a second time by this official, as well as by

defendants Vitale, Millington, and Rockwell.  Am. Compl. at 4.  As of that date, plaintiff was

3

involved in an ongoing lawsuit that he brought against other corrections officials based on a separate use-of-force incident.  *Id*. at 12-13.

Nurse Georgia was apparently present during (or shortly after) the second use-of-force incident, and saw that plaintiff was "bleeding profusely from [his] right knuckle[, but] she refused to check the wound[.]"  Am. Compl. at 10-11.[1]  Thereafter, defendant Giordano subjected plaintiff to a strip frisk, in the presence of defendant Millington, during which time this official physically touched plaintiff's "lower back and buttocks[,]" in violation of state regulations.  *Id*. at 9.[2]

On November 8, 2023, plaintiff was issued a misbehavior report based on the aforementioned events.  *See* Am. Compl. at 19.

On January 8, 2024, defendant Rockwell "conducted a cell frisk without [plaintiff] present and damaged legal documents sent to [him] by PLS regarding [this case]."  Am. Compl. at 8.  Apparently while this was going on, defendant Giordano escorted plaintiff to the "RMHU program area" in mechanical restraints and then "neglected his post" without "do[ing]

---

[1] In the original complaint, plaintiff alleged that Nurse Georgia refused to "give [him] medical attention" following the use-of-force incidents on November 3, 2023.  *See* Compl. at 5.  Plaintiff was advised in the January 2024 Order that the Court did not construe these allegations to assert a cognizable claim against this official because the complaint did not name this official as a defendant, or include any details regarding (1) when this official became aware of plaintiff's injuries, or (2) what response, if any, she provided to plaintiff regarding his injuries.  *See* January 2024 Order at 6 n.7.  Although the amended complaint does not name Nurse Georgia as a defendant in the caption or parties section, the pleading includes slightly more detail regarding this official's alleged wrongdoing.  Accordingly, and for the sake of efficiency, the Clerk is directed to add this official to the docket as a defendant.

[2] Plaintiff also alleges, inconsistently, that he received medical treatment for his bleeding hand when a different nurse entered the building, and separately that he was left in an "OBS cell . . . with pepper spray on [his] face for 4 days[,] with no decontamination [or] medical treatment[.]"  Am. Compl. at 4, 9, 11.

a thorough search" of the other inmates in the room.  *Id*. at 15-16, 20-21.  After defendant

Giordano left the area, an inmate with a history of cutting others "cut" plaintiff "across [his]

face and neck with a sharp cutting instrument[.]"  *Id*. at 15, 20.  Plaintiff received seventeen

stitches as a result of the incident.  *Id*. at 15-16, 20.

The Court liberally construes the allegations in the amended complaint to reassert

each of the Section 1983 claims asserted in the original complaint, and also assert the

following new claims: (1) Fourth Amendment unlawful search claims against defendants

Giordano and Millington based on the alleged events from November 3, 2023; (2) an Eighth

Amendment medical indifference claim against Nurse Georgia based on the alleged events

from November 3, 2023; (3) First Amendment retaliation claims against defendants Giordano

and Rockwell based on the alleged events from January 8, 2024; (4) an Eighth Amendment

failure-to-protect claim against defendant Giordano based on the alleged events from

January 8, 2024; and (5) Fourteenth Amendment due process claims based on the alleged

events from November 3, 2023.

Plaintiff seeks money damages and injunctive relief.  Am. Compl. at 5.  For a more

complete statement of plaintiff's claims, reference is made to the amended complaint.

## C.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of

action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537,

573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting

42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1.  Reasserted Section 1983 Claims

As noted, the amended complaint reasserts each of the Section 1983 claims that previously survived sua sponte review.  Moreover, the allegations in the amended complaint are not materially different from the allegations in the original complaint with respect to these claims.  Accordingly, and for the reasons set forth in the January 2024 Order, these claims once again survive initial review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2.  Newly Asserted Section 1983 Claims

#### a.  Unlawful Search Claims

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility."  *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979).  Courts assessing an inmate's claim that officers infringed his or her Fourth Amendment rights in connection with a strip search must assess whether (1) the inmate possessed "an actual, subjective expectation of bodily privacy," and (2) "the prison officials had sufficient justification to intrude

on [the inmate's] fourth amendment rights."  *Covino v. Patrissi*, 967 F.2d 73, 77-78 (2d Cir. 1992).

In each case, "[t]he test of reasonableness under the Fourth Amendment requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails."  *Bell*, 441 U.S. at 559.  Where an isolated search is challenged as unreasonable, "courts typically apply the standard set forth in [*Bell*]" in determining the reasonableness of the search and consider the following factors: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted."  *Harris v. Miller*, 818 F.3d 49, 58-59 (2d Cir. 2016) (quoting *Bell*, 441 U.S. at 559); *see also Brown v. Oneida Cnty.*, No. 15-CV-0849 (LEK/ATB), 2016 WL 4275727, at *8 (N.D.N.Y. Aug. 12, 2016) (denying motion to dismiss unlawful strip search claim where the complaint alleged that the plaintiff "was forced to strip while corrections officers laughed and pointed an object at [him]" and then "strapped to a chair wearing a clear gown and wheeled 'to the lowest floor of the jail, and he was left to sit in the chair, causing [him] to begin to suffer from an anxiety attack and trouble breathing'"); *Jean-Laurent v. Wilkinson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (holding that a strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish"); *George v. City of New York*, No. 12-CV-6365, 2013 WL 5943206, at *8 (S.D.N.Y. Nov. 6, 2013) ("Because the plaintiffs have adequately and plausibly alleged that the strip search was conducted to 'make a spectacle of [the

inmates] for the new recruits' and to publically humiliate the plaintiffs, defendants' motion to dismiss plaintiffs' claims based on a violation of the Fourth Amendment is denied.").

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), plaintiff's unlawful search claims against defendants Giordano and Millington survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### b.  Medical Indifference Claim

The legal standard governing an Eighth Amendment medical indifference claim was discussed at length in the January 2024 Order and will not be restated herein.  *See* January 2024 Order at 9-10.

Liberally construed, the amended complaint alleges that Nurse Georgia failed to treat plaintiff's injuries following the use-of-force incidents on November 3, 2023, even though plaintiff's right knuckle was "bleeding profusely[.]"  Am. Compl. at 10-11.  Plaintiff also alleges that his "wound [was] cleaned with hydrogen peroxide and cotton" at some point thereafter. *Id*. at 11.  However, according to plaintiff, as a result of the delay in cleaning his wound, "scar tissue . . . buil[t] up[,]" which has resulted in an overall decline in the usefulness of the hand. *Id*.

As an initial matter, because plaintiff alleges that he received medical treatment at some point after the alleged use-of-force incidents, the Court's analysis of the objective

element of his Eighth Amendment claim against Nurse Georgia requires consideration of the

severity of plaintiff's condition and how, if at all, it worsened as a result of the alleged delay in

medical treatment.  *See, e.g.*, *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)

(explaining that "it is appropriate to focus on the challenged delay or interruption in treatment

rather than the prisoner's underlying medical condition alone in analyzing whether the alleged

deprivation" is sufficiently serious); *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir.

2006).  "The [presence] of adverse medical effects or demonstrable physical injury is one . . .

factor that may be used to gauge the severity of the medical need at issue."  *Smith*, 316 F.3d

at 187.  With respect to the subjective element, a delay in providing necessary medical care

may constitute deliberate indifference when the delay occurred "as a form of punishment[,]

ignored a life-threatening and fast degenerating condition . . . or delayed major surgery[.]"

*Freeman v. Strack*, No. 99-CV-9878, 2000 WL 1459782, at *6 (S.D.N.Y. Sep. 29, 2000)

(quoting *Demata v. New York State Corr. Dep't of Health Servs*., 198 F.3d 233 (2d Cir. 1999).

The alleged injury that Nurse Georgia failed to treat was plaintiff's bloody knuckles.

Am. Compl. at 11, 15.  Plaintiff does not allege that the injury required stitches, or presented

any life-threatening issue.  Rather, he alleges that scar tissue built up as a result of the delay

in treatment.  *Id*.  However, because the amended complaint fails to identify the amount of

time that passed between when Nurse Georgia allegedly saw plaintiff's injuries and when a

different nurse treated him, the Court is unable to evaluate the plausibility of this allegation.

In any event, several courts have found that hand injuries of a greater significant do

not constitute an objectively serious medical condition for purposes of an Eighth Amendment

claim.  *See, e.g., Ocasio v. Deluke*, No. 08-CV-0051 (DRH/GLS), 2010 WL 6001595, at *13 (N.D.N.Y. Sept. 3, 2010) (finding that plaintiff's allegations of "a fractured metacarpal" were "insufficient to establish the objective prong of the Eighth Amendment analysis"), *report and recommendation adopted by* 2011 WL 864898 (N.D.N.Y. Mar. 8, 2011); *Osacio v. Greene*, No. 08-CV-0018, 2009 WL 3698382, at *4 (N.D.N.Y. Nov. 2, 2009) (McAvoy, J.) ("Plaintiff's deliberate indifference claim fails because a fractured metacarpal does not rise to the level of a serious medical condition."); *Ruiz v. Homerighouse*, No. 01-CV-266, 2003 WL 21382896, at *3 (W.D.N.Y. Feb. 13, 2003) (same); *Bonner v. New York City Police Dep't*, No. 99-CV-3207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug.17, 2000) (claim that plaintiff suffered from swollen hand and finger that would not bend properly did not constitute serious medical condition); *Benitez v. Straley*, No. 01-CV-0181, 2006 WL 5400078, at *12 (S.D.N.Y. Feb. 16, 2006) (cut on plaintiff's lips, cut on plaintiff's head, and "severe cuts" to plaintiff's wrists-none of which required stitches-did not constitute a medical condition that was sufficiently serious); *cf. Perkins v. Presley*, No. 18-CV-03590, 2022 WL 769339, at *5 (S.D.N.Y. Mar. 14, 2022) ("Plaintiff admits that the only medical consequence of the alleged denial of care is that he now has 'scar tissue' on the inside of his mouth. . . . That is not sufficient to establish a sufficiently serious medical need." (collecting cases)).  Thus, the amended complaint lacks allegations which plausibly suggest that plaintiff was suffering from a sufficiently serious condition when Nurse Georgia witnessed his injuries.

Furthermore, the allegations in the amended complaint also fail to plausibly suggest that any delay in treatment resulted in plaintiff suffering "sufficiently serious" harm.  *Compare*

*Hill v. Curcione*, 657 F3d. 116, 122 (2d Cir. 2011) (delay "sufficiently serious" if it could have resulted in "death, degeneration or extreme pain"), *with Chatin v. Artuz*, 28 Fed. App'x 9, 10-11 (2d Cir. 2001) (summary order) (two day delay in X-raying injured ankle failed to satisfy objective element); *Poindexter v. Davis*, No. 11-CV-2928, 2012 WL 5465465 at *5 (S.D.N.Y. Nov. 9, 2012) (six-hour delay in treating hand fracture did not satisfy objective element); *Johnson v. City of New York*, No. 12-CV-8265, 2014 WL 5393181, at *6 (S.D.N.Y. Oct. 21, 2014) (finding that the risk of harm was not sufficiently serious because plaintiff could not show that a four and one-half hour delay in examining his broken ankle exacerbated the condition).

Finally, even if the Court were to assume that plaintiff's condition at the time he was examined by Nurse Georgia could be considered sufficiently serious, which it does not, the amended complaint lacks any allegations which plausibly suggest that Nurse Georgia knew that plaintiff was suffering from a serious injury (as opposed to a bloody hand), which required urgent medical treatment, and nonetheless failed to provide it.  Indeed, the amended complaint does not include any allegations regarding what, if anything, plaintiff said to Nurse Georgia, or this official said to plaintiff, regarding his injuries.  In addition, it is entirely unclear from the allegations in the amended complaint (1) when, in relation to the use-of-force incidents, and where, Nurse Georgia witnessed plaintiff's injuries, or (2) why she came to witness the injuries.

In other words, the amended complaint lacks any allegations which plausibly suggest that Nurse Georgia, solely by virtue of allegedly denying plaintiff emergency medical

11

treatment for his bloody hand, acted with deliberate indifference to his serious medical needs. *See Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that delay in treatment of wrist and finger fractures due to "the two nurses and [the doctor] misdiagnos[ing] [the plaintiff's] injuries, and fail[ing] to recognize the severity of those injuries . . . might conceivably show malpractice, but they do not state an Eighth Amendment claim."); *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("Allegations of ... misdiagnosis do not state a cause of action under the Eighth Amendment.") (quotation marks and citation omitted); *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *7 (S.D.N.Y. Feb. 11, 2015) ("The law is clear, however, that misdiagnosis and 'the decision not to treat based on an erroneous view that the condition is benign or trivial' do not constitute deliberate indifference to Plaintiff's serious medical needs." (quoting *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000)).

Accordingly, plaintiff's Eighth Amendment claim against Nurse Georgia is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)  and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c.  Retaliation Claims

The legal standard governing a First Amendment retaliation claim was discussed at length in the January 2024 Order and will not be restated herein.  *See* January 2024 Order at 8.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's newly

asserted retaliation claims against defendants Giordano and Rockwell survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### d.  Failure-to-Protect Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Thus, prison officials may also be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 836.

In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer*, 511 U.S. at

836.  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'"  *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact).  "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted."  *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide

14

knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016).  "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Dept. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough . . . .").

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's failure-to-protect claim against defendant Giordano survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### e.  Due Process Claims

15

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id*.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present

16

documentary evidence, and a written statement of the evidence upon which the hearing

officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)

(citing, inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)).  The hearing officer's

findings must be supported by "some" "reliable evidence."  *Id.* (citing, inter alia,

*Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

    Although plaintiff received a misbehavior report based on the alleged events from

November 3, 2023, it is entirely unclear from the amended complaint what punishment, if any,

he received as a result of the charges in the misbehavior report.  Indeed, the amended

complaint does not include any allegations regarding plaintiff's disciplinary hearing, or the

disciplinary determination rendered at the conclusion of the hearing.  Thus, the Court has no

basis to plausibly infer that plaintiff suffered a violation of his due process rights in connection

with the alleged events from November 3, 2023, let alone that any of the named defendants

were personally involved in any such deprivation.  *See Freeman v. Rideout*, 808 F.2d 949,

950, 953 (2d Cir. 1986) ("[T]he filing of unfounded charges is not per se a constitutional

violation under section 1983[.]"); *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (noting

that "when an inmate is able to show either (1) that he was disciplined without adequate due

process as a result of the [allegedly false] report; or (2) that the report was issued in

retaliation for exercising a constitutionally protected right[,]" the alleged creation of a false

report may give rise to a constitutional claim); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349

(2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony

against an inmate . . . violates due process only where either procedural protections were

17

denied that would have allowed the inmate to expose the falsity of the evidence against him, .

. . , or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's

exercise of his substantive constitutional rights . . . ." (internal citations omitted)).

Accordingly, plaintiff's Fourteenth Amendment due process claims are dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a

claim upon which relief may be granted.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk file pages 2 through 6 of plaintiff's supplemental submission

(Dkt. No. 18 at 2-6) immediately after page 11 of the amended complaint (Dkt. No. 17); and it

is further

**ORDERED** that the Clerk update the docket to add Nurse Georgia as a defendant;

and it is further

**ORDERED** that the following claims **SURVIVE sua sponte review** and require a

response: (1) plaintiff's Eighth Amendment excessive force claims against defendants

Giordano, Millington, Rockwell, and Vitale; (2) plaintiff's First Amendment retaliation claim

against defendant Giordano based on alleged events from November 3, 2023; (3) plaintiff's

Eighth Amendment medical indifference claims against defendants Giordano, Millington,

Rockwell, and Vitale based on alleged events from November 3, 2023; (4) plaintiff's Fourth

Amendment unlawful search claims against defendants Giordano and Millington based on the

alleged events from November 3, 2023; (5) plaintiff's First Amendment retaliation claims

against defendants Giordano and Rockwell based on the alleged events from January 8, 2024; and (6) plaintiff's Eighth Amendment failure-to-protect claim against defendant Giordano based on the alleged events from January 8, 2024; and it is further

ORDERED that all remaining Section 1983 claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, as set forth above; and it is further

ORDERED that the Clerk shall TERMINATE Nurse Georgia from this action; and it is further

ORDERED that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants Giordano, Millington, Rockwell, and Vitale; and it is further

ORDERED that upon the completion of service, a response to plaintiff's amended complaint be filed by each of the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will

be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated:  May 22, 2024
        Albany, NY

Mae A. D'Agostino
U.S. District Judge

20