UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY J. WILMOT-FRANCIS,

                                **Plaintiff,**

   vs.                                         9:23-CV-1535
                                                         (MAD/DJS)

RYAN GIORDANO, JOSIAH MILLINGTON,
NICHOLAS VITALE, and CLAYTON ROCKWELL,

                                **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**ANTHONY J. WILMOT-FRANCIS**
21-A-1315
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403
Plaintiff *Pro Se*

**CONWAY, DONOVAN**                      **RYAN T. DONOVAN, ESQ.**
**& MANLEY, PLLC**
50 State Street - 2nd Floor
Albany, New York 12207
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On December 7, 2023, Plaintiff Anthony J. Wilmot-Francis, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the First, Fourth, and Eighth Amendments. *See* Dkt. No. 1 at 4-5; *see*

1

*also* Dkt. No. 17 at 4-5, 8.  On March 29, 2024, Plaintiff filed an Amended Complaint.[1]  *See* Dkt. No. 17.

Defendants, DOCCS correctional officers Ryan Giordano, Josiah Millington, Nicholas Vitale, and Clayton Rockwell, move to dismiss Plaintiff's First Amendment retaliation and Eighth Amendment medical indifference claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. No. 33-5 at 13, 15.  Defendants simultaneously move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's First Amendment retaliation and Eighth Amendment failure to protect claims based on Plaintiff's failure to properly exhaust his administrative remedies after January 8, 2024.[2]  *Id.* at 5, 7-11.  Plaintiff responded in opposition, *see* Dkt. No. 36, and Defendants replied.  *See* Dkt. No. 38.  Plaintiff also filed two motions for the appointment of counsel.  *See* Dkt. Nos. 37, 42.  Defendants' answer deadline has been stayed pending resolutions of these motions.  *See* Dkt. No. 34.

In a Report-Recommendation and Order dated June 9, 2025, Magistrate Judge Daniel J. Stewart recommended that the Court grant in part and deny in part Defendants' Rule 12(b)(6)

---

[1] After reviewing the Amended Complaint for legal sufficiency under 28 U.S.C. 1915A, the Court permitted the following claims to proceed: "[P]laintiff's Eighth Amendment excessive force claims against [D]efendants Giordano, Millington, Rockwell, and Vitale; (2) [P]laintiff's First Amendment retaliation claim against [D]efendant Giordano based on alleged events from November 3, 2023; (3) [P]laintiff's Eighth Amendment medical indifference claims against [D]efendants Giordano, Millington, Rockwell, and Vitale based on alleged events from November 3, 2023; (4)[P]laintiff's Fourth Amendment unlawful search claims against [D]efendants Giordano and Millington based on the alleged events from November 3, 2023; (5) [P]laintiff's First Amendment retaliation claims against [D]efendants Giordano and Rockwell based on the alleged events from January 8, 2024; and (6) [P]laintiff's Eighth Amendment failure-to-protect claim against [D]efendant Giordano based on the alleged events from January 8, 2024[.]" Dkt. No. 19 at 18-19.

[2] "Plaintiff's Eighth Amendment excessive force and Fourth Amendment unlawful search claims are not the subject of [D]efendant's motion" and will not be addressed by the Court.  Dkt. No. 33-5 at 3 n.1.

2

motion and deny Defendants' Rule 56 motion. *See* Dkt. No. 49 at 2. Magistrate Judge Stewart also denied Plaintiff's motions for the appointment of counsel. *See id.*

On June 26, 2025, Plaintiff filed objections to the Report-Recommendation and Order. *See* Dkt. No. 50. Plaintiff made specific objections to Magistrate Judge Stewart's denial of Plaintiff's motions for the appointment of counsel. *See id.* The Report-Recommendation and Order will be reviewed for clear error as Plaintiff did not otherwise object to Magistrate Judge Stewart's recommendations and Defendants did not file any objections. *See id.*

## II. BACKGROUND

At all relevant times underlying the alleged events, Plaintiff was incarcerated at Marcy Correctional Facility, a DOCCS facility. *See* Dkt. No. 17 at 2.

Plaintiff claims that on November 3, 2023, Defendants Vitale, Millington, Rockwell, and Giordano physically assaulted him and used excessive force. *See id.* at 4. He alleges he was choked, pepper sprayed, poked in the eye, and punched in the upper body, lower body and face, which Plaintiff refers to as "combative strikes." *Id.* at 4, 10, 17. Plaintiff avers he suffered a deep laceration on his hand, which Nurse Georgia Hall allegedly refused to treat. *See id.* at 4-5, 11. Plaintiff states that Defendants Millington and Giordano conducted a stop and frisk which included physically touching his lower back and buttocks to conduct a "cavity search." *Id.* at 9. Plaintiff alleges that these assaults were in retaliation for Plaintiff's active litigation against correctional staff in an "attempt[] to influence the court proceedings." *Id.* at 12.

Plaintiff then claims that on January 8, 2024, Defendant Rockwell conducted a cell search without Plaintiff's presence and damaged legal documents regarding Plaintiff's "current case." *Id.* at 8. On the same day, Plaintiff alleges that Defendant Giordano "willfully neglected his post . . . [and] failed to do a thorough search" of other incarcerated individuals, and as a result, he was

3

physically assaulted by a known, violent inmate. *Id.* at 14-15. Plaintiff attests that these incidents were a purposeful form of retaliation for Plaintiff's legal action. *See id.* at 8. Specifically, Plaintiff claims that Defendant Rockwell conducted the cell search after the legal documents "were sent to [him] by [Prisoners' Legal Services] regarding the incident on Nov[ember] 3[,] 2023." *Id.*

The grievance office at DOCCS has no record of Plaintiff filing a grievance regarding the events alleged to have occurred on January 8, 2024.[3] *See* Dkt. No. 33-4 at ¶ 15. However, Plaintiff recalls submitting a grievance after the January 8, 2024, incident, as well as writing a follow-up letter prior to being relocated to a different facility. *See* Dkt. No. 36 at 4-5.

### III. DISCUSSION

**A.    Standard of Review**

*1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure analyzes the legal sufficiency of a plaintiff's claim for relief. *See* FED. R. CIV. P. 12(b)(6); *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). A complaint must "'state a claim to relief that is plausible on its face' . . . [and] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[3] As Defendants do not move for summary judgment on the excessive force claim at this time, they do not discuss the grievance process related to the November 3, 2023, incident. *See* Dkt. No. 33-4.

plausible on its face." *Id.*  A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.* at 570.  Determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679-80.

Although a complaint filed by a *pro se* litigant must be received with "special solicitude, interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s,]'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir. 2006)), "a *pro se* complaint must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quotation omitted).

### 2. Summary Judgment

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See id.*  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See id.*

5

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the nonmovant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing FED. R. CIV. P. 56(c)).

Where a party is proceeding *pro se*, the court must interpret the submitted papers liberally "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citing *Curcione*, 657 F.3d at 122). Before a Court grants summary judgment, the nonmovant "must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Kenific v. Oswego County*, No. 5:07-CV-0213, 2010 WL 2977267, *8 (N.D.N.Y. July 23, 2010) (citing *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotations omitted)). "Thus, summary judgment may be premature before an adequate opportunity for discovery." *Id.* (citing *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 677 n. 1 (S.D.N.Y. 2009)).

### 3. Review of Report-Recommendation

When a party files specific objections to a magistrate judge's dispositive recommendations, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). To be specific, the objection must "'identify [1] the portions of the proposed

findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted).  However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews the recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).

Where a party objects to a magistrate judge's order on nondispositive matters, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.     Application**

   *1. Medical Indifference Claim*

Magistrate Judge Stewart first addressed whether Plaintiff sufficiently stated a medical indifference claim.  *See* Dkt. No. 49 at 8.  In order to state such a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*  The incarcerated individual must demonstrate that the alleged deprivation is "sufficiently serious" and that the prison official's "state of mind is one of deliberate indifference to inmate

health or safety[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994) (additional citations and quotation marks omitted).

The objective standard considers whether the medical condition is "sufficiently serious." *Id.* at 834. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). "Factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

As to the subjective standard, "[w]ith deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer*, 511 U.S. at 836. "[W]hile 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference[.]" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "[N]amely, when the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm[.]" *Id.*

In his Report-Recommendation and Order, Magistrate Judge Stewart concluded that Plaintiff failed to sufficiently allege a medical indifference claim against Defendants. *See* Dkt. No. 49 at 10. As Defendants argued in their motion, and Magistrate Judge Stewart stated in the Report-Recommendation and Order, none of the named Defendants are "alleged to have been

8

directly involved in observing or failing to treat Plaintiff." *Id.* at 8; *see also* Dkt. No. 33-5 at 14-15. Magistrate Judge Stewart acknowledged that Plaintiff alleges "Nurse Georgia Hall" decided "to leave [his] wounds untreated caus[ing] further scar tissue to build up in the wounded area[.]" Dkt. No. 17 at 11; *see also* Dkt. No. 49 at 10. However, the medical indifference claims against Nurse Georgia Hall were previously dismissed and she was terminated from the action. *See* Dkt. No. 19 at 12. Plaintiff does not otherwise allege Defendants' involvement in the medical indifference claims, nor their knowledge of Nurse Georgia Hall's actions. *See generally* Dkt. No. 17. "Conclusory allegations that medical staff defendants were aware of a plaintiff's medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care." *Flemming v. Smith*, No. 9:11-CV-00804, 2014 WL 3698004, *6 (N.D.N.Y. July 24, 2014) (collecting cases); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'") (citations omitted); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07 (S.D.N.Y. 2002) (holding that if prison staff were not "personally involved" in the unconstitutional conduct, the medical indifference claim must be dismissed). Therefore, Magistrate Judge Stewart is correct in concluding that, "even accepting as true for purposes of this Motion that Plaintiff suffered a serious injury, there is no allegation against any moving Defendant that they were aware of and disregarded such an injury." Dkt. No. 49 at 10. The Court agrees that Plaintiff's Eighth Amendment medical indifference claim must be dismissed.

### 2. Retaliation Claim

Magistrate Judge Stewart next addressed Plaintiff's November 3, 2023, retaliation claim. *See id.* at 11. "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his

9

speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)) (additional citation omitted). The Second Circuit has warned that "[c]ourts must approach prisoner retaliation claims with 'skepticism and particular care[.]'" *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quotation and other citation omitted). This is true because given the nature of a retaliation claim they are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 11-12 (quotation omitted).

First, "[i]t is well-settled that filing a grievance or lawsuit is constitutionally protected conduct." *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 206 (N.D.N.Y. 2015) (citing *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 144 (2d Cir. 2001)) (additional citations omitted). Second, "an adverse action in a First Amendment retaliation case is 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Cox*, 654 F.3d at 273 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). The Second Circuit has recently noted "that other circuits have concluded that destruction or confiscation of legal materials may amount to an adverse action." *Walker*, 130 F.4th at 303 (citing *Richards v. Perttu*, 96 F.4th 911, 918 (6th Cir. 2024); *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986)). For the sole purpose of the pending motion, Defendants concede

that Plaintiff has established the first two elements of the retaliation claim. *See* Dkt. No. 33-5 at 14 n.2.

The only element currently in dispute is the third: causation. *See id.* "To demonstrate a causal connection 'a plaintiff must show that the protected speech was a substantial motivating factor in the adverse . . . action.'" *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006)). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Id.* (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)). "Since a direct showing requires plaintiff to provide 'tangible proof' of retaliatory animus, 'conclusory assertions of retaliatory motive' are insufficient." *Id.* at 118-19 (citing *Cobb*, 363 F.3d at 108).

To establish an indirect showing of a causal connection, "a court may consider a number of factors, including 'any statements made by the defendant concerning his motivation' and 'the temporal proximity between the protected activity and the defendant's adverse action.'" *Alston v. Bellerose*, No. 3:12-CV-00147, 2015 WL 4487973, *8 (D. Conn. July 23, 2015) (collecting cases). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). "While there is no 'bright line . . . defin[ing] the outer limits' of the 'temporal relationship,' courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection." *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 130 (N.D.N.Y. 2023) (quoting *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980)).

Magistrate Judge Stewart concluded that, although Plaintiff does not specifically allege how Defendant Giordano knew about Plaintiff's ongoing litigation, "it cannot be said that the allegations as to causation are so conclusory at this stage of the litigation to warrant dismissal."[4] Dkt. No. 49 at 13.  The Court does not entirely agree.

Plaintiff identifies the litigation he is involved in as "The People of the State of New York vs. Anthony Wilmot-Francis" and "Superior CT case # IND-70967-23/001 (DA # 123-245)." Dkt. No. 17 at 12.  Plaintiff alleges Defendant Giordano's assault on November 3, 2023, was motivated by Plaintiff's court proceedings "in which *the officers* reputation would be compromised."  *Id.* (emphasis added).  Beyond this conclusory statement, Plaintiff does not explain when the litigation commenced and whether it involves any of the Defendants named in this action—let alone Defendant Giordano, specifically.  For instance, Plaintiff refers to "the officers" which can allude to the litigation involving some combination of the named Defendants. *Id.*  However, although tenuous, the Court will permit Plaintiff's *pro se* claim to proceed because Magistrate Judge Stewart's conclusion does not constitute clear error.  *Id.*; *see also Burrell*, 655 F. Supp. 3d at 131 (holding that the "plaintiff . . . sufficiently plead retaliatory animus to suggest a causal connection between protected conduct and the aforementioned adverse action" despite the lack of temporal proximity and any statements made by the defendant concerning their motivation, especially early in the litigation process); *see also Iqbal*, 556 U.S. at 678 ("A claim

---

[4] In the May 22, 2024, Decision and Order, this Court expressly permitted to proceed the following two retaliation claims: "[P]laintiff's First Amendment retaliation claim against [D]efendant Giordano based on the alleged event from November 3, 2023" and "[P]laintiff's First Amendment retaliation claims against [D]efendants Giordano and Rockwell based on the alleged events from January 8, 2024[.]"  Dkt. No. 19 at 18-19.  Defendants appear to conflate the issues as they seek to dismiss "Plaintiff's retaliation claims against Defendants Giordano *and Rockwell*" for the November 3, 2023, incident.  *See* Dkt. No. 33-5 at 15 (emphasis added).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Therefore, the Court adopts Magistrate Judge Stewart's recommendation that the retaliation claim not be dismissed at this stage.[5]

### 3. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies by not filing a grievance regarding the January 8, 2024, incident. *See* Dkt. No. 33-5 at 5. Magistrate Judge Stewart concluded that "there appears to be a dispute about whether Plaintiff filed a grievance," and even assuming he did not, "questions of fact exist as to whether the grievance process was meaningfully available to him." Dkt. No. 49 at 15-16. The Court agrees.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "The PLRA attempts to

---

[5] Magistrate Judge Stewart cited to *Alston v. Bellerose*, No. 3:12-CV-00147, 2015 WL 4487973 (D. Conn. July 23, 2015), which held that the plaintiff stated a plausible claim for retaliation by alleging that the defendants were "generally aware of [the p]laintiff's participation in a protected activity. . . . Evidence, adduced through discovery, may suggest a contrary conclusion. . . . Should that be the case, [the p]laintiff's retaliation would be fit for summary disposition." *Alston*, 2015 WL 4487973, at *9; *see* Dkt. No. 49 at 13. However, the factual basis underlying *Alston* differs from this case. There, the plaintiff recalled specific comments made by the defendants which established a causal connection. *Id.* at *8-*9. Further, temporal proximity was demonstrated by the dates of the specific protected activity and retaliatory conduct. *Id.* Here, as mentioned, Plaintiff does not include specific dates the litigation occurred, nor any specific comments made by Defendants related to it. Although *Alston* is not factually similar, the standard for clear error "does not entitle [the Court] to overturn a finding 'simply because [the Court is] convinced that [it] would have decided the case differently.'" *Glossip v. Gross*, 576 U.S. 863, 881 (2015) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). Therefore, although this Court may have found the causal connection to be too tenuous to state a retaliation claim if it were reviewing the Amended Complaint in the first instance, the Court finds no clear error in Magistrate Judge Stewart's conclusion.

13

eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)) (footnote omitted). It "'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu v. Richards*, 605 U.S.__, 145 S.Ct. 1793, 1798 (2025) (quoting *Woodford*, 548 U.S. at 88, 93).

However, an inmate is not required to exhaust administrative remedies that are unavailable. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). There are three potential circumstances in which administrative remedies may be unavailable, as provided by the Supreme Court:

> (1) where the administrative procedure technically exists but operate as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is so "opaque that is becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance process was unavailable to him. *See Saeli v. Chautauqua Cnty., N.Y.*, 36 F.4th 445, 453 (2d Cir. 2022).

Here, there appears to be a dispute about whether Plaintiff filed a grievance regarding the January 8, 2024, incident. Defendants produced evidence establishing that a grievance was not received regarding this incident, nor was an extension requested by Plaintiff. *See* Dkt. No. 33-2 at ¶¶ 17, 22-23. Plaintiff, on the other hand, claims that he did file a grievance after the January 8, 2024, incident and was subsequently moved to a different facility without receiving a response.

*See* Dkt. No. 36 at 4-5. While Plaintiff does not attach the grievance itself, he proffers specific details regarding its contents. For instance, Plaintiff recalls that the grievance stated "Negligence, Gross Negligence, Gross Misconduct, Willful[] Misconduct/Negligence of Correctional Staff." *Id.* at 4. Plaintiff further alleges the grievance included a request "for Ryan Giordano [to] stay away" from him following the incident. *Id.* Finally, he remembers the name of the individual to which he sent an additional follow-up letter. *See id.* at 5.[6]

In his response, Plaintiff cites *Williams v. Prianto*, 829 F.3d 118 (2d Cir. 2016), which held that DOCCS' grievance procedures "do not describe a mechanism for appealing a grievance that was never filed." *Williams*, 829 F.3d at 126; *see* Dkt. No. 36 at 5. As discussed by Magistrate Judge Stewart, in *Williams*, the plaintiff filed a grievance in accordance with DOCCS' procedures, was subsequently moved to a different facility, and never received a response. *See Williams*, 829 F.3d at 121; *see also* Dkt. No. 49 at 17. Magistrate Judge Stewart noted that transferring an individual "to a different facility before receiving a response to a purportedly filed grievance" adds uncertainty in the grievance process. Dkt. No. 49 at 17. In this case, Plaintiff was moved to a different facility before receiving a response. *See* Dkt. No. 36 at 5. Defendants do not address the potential impact Plaintiff's transfer had on the grievance process in their reply. *See* Dkt. No. 38 at 4-6 (asserting only that the letters written by Plaintiff may "not [be] the proper vehicle for which an incarcerated individual may grieve" and that Plaintiff never appealed a

---

[6] Plaintiff provided additional detail concerning his purported grievance filing in his response to Defendants' motion which was not included in his Amended Complaint. *See* Dkt. Nos. 17, 36. Magistrate Judge Stewart considered the information, *see* Dkt. No. 49 at 15-16, as does this Court. "[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." *Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 (N.D.N.Y. 2009) (footnote omitted).

15

grievance as required). This raises a question of fact as to whether the grievance process was available to Plaintiff.[7]

Ultimately, "[v]iewing the facts in the light most favorable to [P]laintiff, the record suggests that [P]laintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available[.]" *Fann v. Graham*, No. 9:15-CV-1339, 2018 WL 1399331, *6 (N.D.N.Y. Jan. 11, 2018). Magistrate Judge Stewart also correctly concluded that it would not be appropriate to order an exhaustion hearing at this time before affording the parties an opportunity to conduct discovery. *See* Dkt. No. 49 at 18; *see also Hellstrom*, 201 F.3d at 97 ("Only in the rarest of case may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery"); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Croney v. Medbury*, No. 9:23-CV-1449, 2024 WL 5294279, *4 (N.D.N.Y. Nov. 12, 2024). Therefore, Defendants' motion for summary judgment is denied as premature.

**C.     Appointment of Counsel**

Finally, Magistrate Judge Stewart addressed Plaintiff's request for the appointment of counsel. *See* Dkt. No. 49 at 18. "[T]he Second Circuit has admonished that [courts] must be [mindful] of the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care." *Cato v. McCulloch*, No. 9:20-CV-0176, 2020 WL 13908745, *7 (N.D.N.Y. Apr. 28, 2020) (citing *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (noting that "[v]olunteer lawyer time is a precious commodity")). Due to the limited resources available for

---

[7] Magistrate Judge Stewart further illuminated the indeterminate nature of the grievance process. *See* Dkt. No. 49 at 17. Defendants affirmed that "Plaintiff never appealed *any* grievances to CORC." *Id.* (quoting Dkt. No. 33-3 at ¶ 13). However, Magistrate Judge Stewart accurately stated that Defendants are not seeking summary judgment as to *all* of Plaintiff's claims, and thus, Defendant's statement "adds to the uncertain nature of the current record." *Id.*

16

indigent litigants and "recognizing the 'thankless burden' associated with such assignments, . . . courts should not grant such applications indiscriminately, but instead must exercise sound judgment and restraint in doing so." *Ross v. New York*, No. 9:19-CV-1207, 2019 WL 13545262, *1 (N.D.N.Y. Oct. 24, 2019) (citing *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 171-72 (2d Cir. 1989); *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961)). The factors informing the decision of whether to appoint counsel have been summarized by the Second Circuit as follows:

> In deciding whether to appoint counsel . . . , the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).

Upon consideration of these factors, Magistrate Judge Stewart concluded that the appointment of counsel is not warranted because Plaintiff has not provided the "Court with evidence, as opposed to mere allegations, relating to his . . . claims[.]" Dkt. No. 49 at 19 (citing *Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379, *1 (S.D.N.Y. Mar. 17, 1997)). Magistrate Judge Stewart found that Plaintiff has "demonstrated an ability to effectively manage this litigation on his own, including effectively responding to the pending dispositive motions." *Id.*

Plaintiff claims in his objections that it is "nearly impossible to conduct legal research, without extreme censorship of legal material" because at times "the law library tablets . . . [are] removed from [their] possession[.]" Dkt. No. 50 at 1. Plaintiff further avers there are "prolonged wait(s) for . . . legal resources." *Id.* Plaintiff's limited access to a law library access, however, is

an insufficient reason on its own to appoint counsel. *See Ellis v. Corey*, No. 9:22-CV-0589, 2023 WL 11965004, *2 (N.D.N.Y. Jan. 10, 2023); *see also Boyd v. Petralis*, No. 16-CV-6286, 2019 WL 4253902, *2 (W.D.N.Y. Sept. 9, 2010) (holding that "extremely limited" library access for those in segregated housing was not compelling enough to justify court-appointed counsel). Plaintiff has submitted an Amended Complaint that adequately identifies the relevant factual background in this matter and has filed responsive and timely objections, signifying his ability to handle the litigation at this time. *See* Dkt. No. 17; *see also* Dkt. No. 50. He has not submitted any information indicating an inability to continue with the proceedings or otherwise represent himself.

Plaintiff also states in his objections that "cross-examination and legal discovery are almost impossible for your average incarcerated individual." Dkt. No. 50 at 1. However, Plaintiff's case "is not factually or legally complicated and discovery on this issue would seem to be straightforward." *Morrison v. Dr. Pepper Snapple Grp.*, No. 11-CV-6148, 2012 WL 3993672, *2 (W.D.N.Y. Sept. 11, 2012). "While it is possible that there will be conflicting evidence requiring cross-examination at . . . trial . . . , this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citation omitted). "Many *pro se* litigants have handled similar Section 1983 claims with considerable proficiency, and the Court finds no indication that plaintiff will be unable to do so here." *Id.* At this time, discovery has yet to occur, and the case is not yet scheduled for trial. As the case progresses, Plaintiff may renew his request for counsel should circumstances change. Therefore, as Magistrate Judge Stewart concluded, the Court finds that appointing counsel would be inappropriate at this time, and Plaintiff's motions and objections are denied.

## IV. CONCLUSION

After carefully reviewing the parties' submissions, Magistrate Judge Stewart's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 49) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** Defendants' motion to dismiss and for summary judgment (Dkt. No. 33) is **GRANTED in part and DENIED in part** as set forth above;[8] and the Court further

**ORDERS** Plaintiff's motions for appointment of counsel (Dkt. Nos. 37, 42) are **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 16, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[8] The following claims are proceeding: Eighth Amendment excessive force against Defendants Giordano, Millington, Rockwell, and Vitale; Fourth Amendment unlawful search against Defendants Giordano and Millington; First Amendment retaliation against Defendant Giordano based on the alleged events from November, 3, 2023; First Amendment retaliation against Defendants Giordano and Rockwell based on the alleged events from January 8, 2024; and Eighth Amendment failure to protect claims against Defendant Giordano based on the alleged events from January 8, 2024. Plaintiff's Eighth Amendment medical indifference claim is dismissed.